NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JONATHON STERLING, | Hon. Dennis M. Cavanaugh |
| Plaintiff, | **OPINION** |
| v. | Civ. Act. No. 2:12-CV-02878 |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the appeal of Jonathon Sterling ("Plaintiff") from the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claims for a period of disability and disability insurance benefits under Title II of the Social Security Act upon a decision from Administrative Law Judge Dunn. This Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to FED. R. CIV. P 78, no oral argument was heard. After carefully reviewing the parties' submissions and for the reasons expressed herein, the final decision entered by the Administrative Law Judge is **affirmed.**

## I. BACKGROUND

### A. Procedural History

On December 4, 2007, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning on March 28, 2007. (Tr. 109-11). This onset date was later amended to April 12, 2007. (Tr. 29). The claim was denied initially and again upon reconsideration. (Tr. 57-66). Plaintiff then filed a timely written request for a hearing on May 15, 2009. (Tr. 68-69). Plaintiff appeared and testified at a hearing held on July 29, 2010 in Newark, NJ. (Tr. 25-26). Plaintiff was represented by an attorney, Liam Jones. (Tr. 25-26). Plaintiff was denied eligibility for disability benefits under sections 216(i) and 223(d) of the Social Security Act on September 21, 2010 by the Administrative Law Judge Barbara Dunn. (Tr. 21). On March 23, 2012, the Appeals Court denied Plaintiff's February 24, 2011, Request for Review of the ALJ's decision (Tr. 1-9), leading to this appeal.

### B. Factual History

#### a. Findings of the Administrative Law Judge

The relevant findings of the ALJ were as follows: (1) Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2012; (2) Plaintiff has not engaged in substantial gainful activity since the amended onset date of April 12, 2007; (3) Plaintiff has the severe combination of impairments of depression, anxiety disorder, bipolar disorder, gout, bilateral osteoarthritis of the knees, and substance abuse or history of substance abuse; (4) Plaintiff does not have "an impairment or combination of impairments that met or equaled an impairment contained in 20 C.F.R. Part 404 Subpart P, Appendix"; (5) if Plaintiff's substance abuse issue was removed from consideration, the remaining limitations would cause more than a minimal impact on Plaintiff's ability to perform basic work activities, causing the Plaintiff to have a severe impairment or combination of impairments, however; (6) If Plaintiff's

1

substance abuse were not an issue, Plaintiff would not have an impairment or combination of impairments that meet or medically equals any of the impairments listed in 20 CFR Part 404 Subpart P, Appendix 1. (Tr. 15-19).

In terms of future employment capacity, the ALJ further found that: (7) based on all of the impairments, including the substance use disorder, Plaintiff had the residual functional capacity "to perform light work as defined in 20 C.F.R. § 404.1567(b), except Plaintiff would be expected to miss five or more days per month of work due to his substance abuse issue"; (8) the Plaintiff is unable to return to past relevant work; (9) Plaintiff's job skills do not transfer to other occupations within the residual functional capacity defined in 20 CFR § 404.1568; (10) if Plaintiff's substance abuse were not an issue, the claimant would have the residual capacity to perform the full range of light work as defined in 20 CFR § 404.1567(b), and finally; (11) because Plaintiff would not be disabled if the substance abuse issue is removed from consideration, the claimant's substance abuse disorder is a contributing fact material to the determination of disability, thus making Plaintiff not disabled within the meaning of the Social Security Act. (Tr. 16-20).

### b. Plaintiff's Testimony

Plaintiff's career had been mainly centered in the technology industry, working as a computer consultant and email systems designer since 1996 (Tr. 129). Plaintiff was terminated from his last employment due to drug use, resulting in erratic sleep patterns and inability to attend client meetings. (Tr. 39-40). After entering rehab and becoming sober, Plaintiff claimed that he was unable to work full time because of bipolar disorder, stress, anxiety, depression, trouble concentrating, and inability to sleep. (Tr. 43). Plaintiff testified that he had long term memory issues and difficulty following instructions. (Tr. 45). Since April 2007, Plaintiff's daily

routine included attending two Narcotics Anonymous meetings a day with some volunteer work feeding animals at an animal shelter and stuffing envelopes for the Obama campaign. (Tr. 45-52). However, since taking bipolar medication in June 2009, Plaintiff believed that he could be able to do limited part-time work, and his doctor had approved part time work for two or three days a week up to four hours at a time in a situation that was not "intellectually stressful." (Tr. 31-32, 48).

### c. Medical Evidence

After taking pain medications like Oxycotin for gouty arthritis, kidney stones, and knee pain, Plaintiff subsequently developed an opiate addiction. (Tr. 33-35). Plaintiff entered an in-patient facility for treatment on August 9, 2007 and now attends weekly Narcotic Anonymous meetings and takes non-opiate medication. (Tr. 34-35, 52, 204). On August 19, 2007, Plaintiff was assessed with a Global Assessment of Functioning (GAF)[1] of 50 and a highest past-year's GAF of 40. (Tr. 205). Further, Plaintiff was also assessed as having a poor sleep pattern, depression, generalized anxiety, difficulty concentrating, and passive suicidal intentions at The Recovery Place, a rehab center, by Tina Saunders, LMHC. (Tr. 201).

A June 24, 2008 evaluation by Dr. Jane Shapiro provided a record of Plaintiff's condition at the time. (Tr. 245-262). Dr. Shapiro noted that Plaintiff suffered from a 12.04 Affective Disorder characterized by loss of interests in activities, sleep disturbance, feelings of guilt, and difficulty concentrating along with a 12.09 Substance Addiction Disorder. (Tr. 245). Dr. Shapiro listed that Plaintiff was moderately limited in restrictions of activities of daily living, had difficulties in maintaining social functioning, and also had difficulties in maintaining concentration, persistence, or pace. (Tr. 255). Further, Dr. Shapiro asserted that Plaintiff's

---

[1] *A GAF score indicates overall psychological functioning. See Def's Br. for scoring explanation citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text revision 2000).*

condition provided no evidence of Plaintiff's inability to remember locations and work like procedures, understand and remember very short and simple instructions, and understand and remember detailed instructions, but noted Plaintiff was moderately limited in his ability to maintain concentration for extended periods and perform activities within a schedule. (Tr. 259).

On January 18, 2008, Dr. James Borthwick reported that Plaintiff's memory was improving and that Plaintiff's cognition and sustained concentration and persistence was grossly intact, but not at the level of functionality that they once were. (Tr. 273). In January 2009, Dr. Borthwick asserted that Plaintiff "continues to struggle with symptoms of depression that have impaired his ability to return to work at his previous level of functioning." (Tr. 263). Due to anxiety, depression, and loss of confidence, Plaintiff was unable to concentrate. (Tr. 263).

On May 3, 2010, Dr. Borthwick diagnosed Plaintiff with Bipolar Disorder Type II, depression, poly-substance dependence, and a GAF of 60, up from the past year's GAF of 55. (Tr. 292). Dr. Borthwick noted that Plaintiff's "judgment and cognition remained impaired, but had been improving gradually." (Tr. 292). Dr. Borthwick concluded that Plaintiff was not capable of returning to work at his previous level of functioning, but could benefit from light part-time employment. (Tr. 293).

Dr. Borthwick's most recent letter dated November 30, 2010, assessed that Plaintiff's "Bipolar diagnosis is based on a history of fluctuations in mood, energy, productivity at times of prolonged sobriety." (Tr. 366). Dr. Borthwick stated that Plaintiff was initially diagnosed with depression because of his past drug use, and when Plaintiff failed to respond to trials with several antidepressants, a moodstabilizer traditionally used to treat bipolar disorder was tried, and Plaintiff's condition improved. (Tr. 366). Dr. Borthwick noted that a "lack of response to antidepressants and a positive response to a mood stabilizer is consistent with the bipolar

diagnosis." (Tr. 366).

## II. STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla . . . but may be less than a preponderance." Woody v. Sec'y of Health & Human Servs, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered "substantial." For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g. that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). As such, it does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178,

5

1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must nevertheless "review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).

To properly review the findings of the ALJ, the court needs access to the ALJ's reasoning. Accordingly,

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)). A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was rejected, the court is not permitted to determine whether the evidence was discredited or simply ignored. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

### III. APPLICABLE LAW

#### A. The Five Step Process

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. A claimant is considered disabled under the Social Security Act if he or she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). A claimant bears the burden of establishing his or her disability. Id. § 423(d)(5).

To make a disability determination, the Commissioner follows a five-step process pursuant to 20 C.F.R. § 416.920(a). Under the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties, and is done (or intended) for pay or profit. 20 C.F.R. § 416.972. If the claimant establishes that she is not currently engaged in such activity, the Commissioner then determines whether, under step two, the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). The severe impairment or combination of impairments must "significantly limit[] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The impairment or combination of impairments "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. If the Commissioner finds a severe impairment or combination of impairments, he then proceeds to step three, where he must determine whether the claimant's impairment(s) is equal to or exceeds one of those included in the Listing of Impairments in Appendix 1 of the regulations ("Listings"). 20 C.F.R. § 416.920(d). Upon such a finding, the claimant is presumed to be disabled and is automatically entitled to benefits. Id. If, however, the claimant does not meet this burden, the Commissioner moves to the final two steps.

Step four requires the Commissioner to determine whether the claimant's residual functional capacity sufficiently allows her to resume her previous work. 20 C.F.R. § 416.920(e). If the claimant can return to her previous work, then she is not disabled and therefore cannot

obtain benefits. Id. If, however, the Commissioner determines that the claimant is unable to return to her prior work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner, who must find that the Claimant can perform other work consistent with her medical impairments, age, education, past work experience and residual functional capacity. 20 C.F.R. § 416.920(g). Should the Commissioner fail to meet this burden, the claimant is entitled to social security benefits. 20 C.F.R. § 416.920(a)(4)(v).

Furthermore, "an individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423 (d)(2)(c).

## B. The Requirement of Objective Evidence

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id. Credibility is a significant factor. When examining the record "the adjudicator must

evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186 (July 2, 1996). To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. Id. The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4). A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999)

## IV. DISCUSSION

### a. The ALJ correctly identified Plaintiff's severe impairments

Plaintiff's first argument is that ALJ Dunn "did not address the evidence of [the Plaintiff's] diagnosis or provide any reason for not addressing [the] evidence" of Bipolar Disorder Type II. (Pl. Br. 5) Plaintiff claimed that once he was "correctly diagnosed as suffering from Bipolar Disorder II, none of the previous diagnosis were relevant and the prognosis that accompanied them no longer held weight." (Id.) The ALJ's third finding stated that Plaintiff has the following mental impairments: "depression, anxiety disorder, bipolar disorder...and history of substance abuse." (Tr. 15). The record showed that Plaintiff was diagnosed with anxiety and depression early in the period under consideration, starting in April 2007 from the Recovery Place, Dr. Shapiro, and Dr. Borthwick. (Tr. 222, 248, 263). According to Plaintiff, he had only started taking medication for Bipolar Disorder in May/June of 2009. (Tr. 48). On May 3, 2010, Dr. Borthwick described Plaintiff's current conditions:

> [Plaintiff] has diagnoses of Opiate Dependence, in remission and Biopolar Disoder, Type II. His diagnosis is based on a history of fluctuations in mood,

9

> energy, productivity at times of prolonged sobriety. He was initially diagnosed with depression because of his condition at the time, however he failed to respond to trials with several antidepressants and has done much better with lamictal, a mood stabilizer used to treat bipolar disorder. Lack of response to antidepressants and a positive response to a mood stabilizer is consistent with the bipolar diagnosis.

(Tr. 366). Further, Bipolar Disorder Type II is defined as "a pattern of depressive episodes shifting back and forth with hypomanic episodes, but no full-blown manic or mixed episodes." (*see Def.'s Br.* citing http://www.nimh.nih.gov/health/publications/bipolardisorder/complete-index.shtml).

The fact that anxiety and depression, which are symptoms of Bipolar Disorder, were listed in conjunction with Bipolar Disorder, itself, did not constitute an error by ALJ Dunn based on a reasonable reading of the medical record. More importantly, the ALJ did consider Bipolar Disorder as a severe impairment in which subsequent holding were decided upon. Based on the substantial evidence standard of review and viewing the record in totality, the ALJ properly listed Plaintiff's severe impairment.

### b. The ALJ properly found Plaintiff's bipolar disorder did not meet or equal Listing 12.00

Second, Plaintiff argues that ALJ Dunn erred when holding that Plaintiff, regardless of substance abuse issue, did not have an impairment that meets or medically equals one listed in 20 CFR § 404.1520(d), specifically 12.04 Affective Disorders under 20 CFR PT. 404, Subpt. P, App. 1. (Pl. Br. at 6). Plaintiff is correct that he fulfills Part A of 12.04 Affective Disorders under 20 CFR § 404, Subpt. P, App. 1, as Bipolar Disorder is listed; however, he must also meet either Part B or C, which provide as follows:

> B. Resulting in at least two of the following:
>    1. Marked restriction of activities of daily living; or
>    2. Marked difficulties in maintaining social functioning; or

   3. Marked difficulties in maintaining concentration, persistence, or pace; or
   4. Repeated episodes of decompensation, each of extended duration;
C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
   1. Repeated episodes of decompensation, each of extended duration; or
   2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
   3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

As noted, Plaintiff's Bioplar Disorder Type II is properly included in the impairments considered in the ALJ's analysis. On January 18, 2008, Dr. James Borthwick reported that Plaintiff's memory was improving and that Plaintiff's cognition and sustained concentration and persistence were grossly intact. (Tr. 273). Although the assessment was before Plaintiff was diagnosed with Bipolar Disorder, Dr. Shapiro assessed that Plaintiff was moderately limited in restrictions of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. (Tr. 255). On May 3, 2010, Dr. Borthwick noted that Plaintiff's "judgment and cognition remained impaired, but had been improving gradually." (Tr. 292). Based on a reasonable reading of the record, the ALJ did not err in her conclusion that Plaintiff does not have an impairment or combination of impairments that meet or medically equals one of the impairments listed in 20 CFR PT. 404, Subpt. P, App. 1.

  **c.** **The ALJ properly found Plaintiff's bipolar disorder did not prohibit Plaintiff from performing unskilled light work.**

Third, Plaintiff's asserts that the following holding by ALJ Dunn is not supported by the evidence: "based on all the impairments, including substance abuse, the [Plaintiff] has the residual functional capacity to perform light work defined in 20 CFR 404.1567(b) except the [Plaintiff] would be expected to miss five (5) or more days per month of work due to his substance abuse issue." (Tr.16, Pl's. Br. at 6). ALJ Dunn provides a detailed history of Plaintiff's substance abuse and medical issues. ALJ Dunn noted that Plaintiff "stopped work due to inability to function as his drug usage increased," and that Plaintiff's mental impairments were "directly traceable to his substance abuse." (Tr. 17). When asked why he was terminated from his last job, Plaintiff stated that he was using 25 bags of IV heroin a day, had erratic sleep patterns, could not attend client meetings, and had entered rehab. (Tr. 39-40). Viewing the record as a whole, there is substantial evidence to support that ALJ's finding that if substance abuse was a factor, Plaintiff would be expected to miss five days or more of work per month due to substance abuse.

In addition, Plaintiff argues that Bipolar Disorder Type II is the root cause of his inability to work, separate from substance abuse, which ALJ Dunn did not discuss in the decision. (Pl. Br. at 8) Contrary to Plaintiff's argument, ALJ Dunn does in fact consider Plaintiff's Bipolar Disorder Type II when coming to her conclusion that if substance abuse was not an issue Plaintiff "would have the residual functioning capacity to perform the full range of light work as defined in 20 CFR § 404.1567(b)." (Tr. 19). Specifically, ALJ Dunn opined that Plaintiff's conditions, including Bipolar Disorder, "could reasonably be expected to produce some symptoms but are not persuasive enough to the extent they are inconsistent with the residual functional capacity assessment." (Tr. 20). As discussed previously, Plaintiff only had trouble working when abusing drugs. Off

12

drugs, Plaintiff has a brighter diagnosis. Dr. Borthwick, in a May 3, 2010 assessment which recognized Bipolar Disorder, wrote that Plaintiff had a GAF of 60, Plaintiff's "judgment and cognition remained impaired, but had been improving gradually," and that Plaintiff was not capable of returning to work at his previous level of functioning, but could benefit from employment two to three days a week. (Tr. 292-293). Plaintiff also testified that Dr. Borthwick approved of part time employment, and Plaintiff himself believed that some sort of employment would be beneficial. (Tr. 31).

Therefore, there is substantial evidence that could lead a reasonable person to conclude that Plaintiff's disability was caused by his substance abuse, and absent such substance abuse, Plaintiff has the residual capacity to perform the full range of light work as defined in 20 CFR § 404.1567(b).

## V.  CONCLUSION

For the reasons stated above, the final decision entered by ALJ Dunn is affirmed. An appropriate order accompanies this Opinion.

*[signature]*
Dennis M. Cavanaugh, U.S.D.J.

Date:        June 10, 2013
Original:    Clerk's Office
cc:          All Counsel of Record
             File

13